UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HAYDEN T. RENATO, | CASE NO. C20-708 RSM |
| Plaintiff, | ORDER ON PENDING MOTIONS |
| v. | |
| JOHN N. BEAULIEU, et al., | |
| Defendants. | |

## I.     INTRODUCTION

Plaintiff Hayden T. Renato's lawsuit relates to the difficult circumstances of his upbringing.  Throughout his childhood, Mr. Renato had to endure head trauma suffered as an infant, delayed medical treatment further exacerbating and complicating the head trauma, impaired brain development, physical abuse, neglect, forced relocation, and a lack of mental health support.  Largely because of these issues, Mr. Renato, while still a minor, engaged in harmful and unlawful conduct and ultimately faced adult criminal charges.  Seeking redress, Mr. Renato has sued numerous defendants, an extensive cast of characters that Mr. Renato blames for his difficult upbringing and its ruinous effects on his childhood and early adult life.

Many of the defendants named in Mr. Renato's suit have appeared before the Court and have sought dismissal of Mr. Renato's claims, either by motions to dismiss or a motion for

ORDER – 1

summary judgment. Mr. Renato has responded to some of defendants' dispositive motions and has sought leave to file an amended complaint. Having reviewed the matter, the Court grants the defendants' motions, but affords Mr. Renato an opportunity to re-plead many of his claims in an amended complaint.

## II.    BACKGROUND

### A. Mr. Renato's Childhood Head Trauma and Its Continuing Impacts

Mr. Renato is the son of Defendants John N. Beaulieu and Jennifer M. Brock. Dkt. #14 ¶¶ 11–13. When Mr. Renato was less than a year old, he suffered blunt force trauma to his head and resultant bleeding in his brain. *Id.* ¶ 23. Mr. Renato's parents did not immediately seek medical care. *Id.* ¶ 23. When they did, possibly several months after the injury, surgery was required to install a tube (a "shunt") to drain the fluid building up in Mr. Renato's head into his abdomen. *Id.* ¶¶ 23–24.

Due to the nature of Mr. Renato's injuries, his parents were investigated for possible child abuse. *Id.* at ¶ 25. But the investigation was inconclusive, and no enforcement action was taken. *Id.* As Mr. Renato aged, he sought to better understand his injuries but when he questioned his parents about the circumstances of his injury, he received conflicting accounts. *Id.* ¶ 26. The conflicting accounts have led Mr. Renato to believe that misconduct played a significant role in his injury and that his parents delayed treatment to obscure their misconduct. *Id.* ¶¶ 26–27.

The effects of Mr. Renato's injury and his parents' delay in seeking medical treatment plagued him thought his childhood. Specifically, Mr. Renato notes the significant effects of traumatic brain injuries on normal social development, reasoning skills, and behavioral regulation, abilities with which Mr. Renato has struggled. *Id.* ¶ 30. Mr. Renato has further suffered from mental health issues that he, at least partly, attributes to his knowledge that he suffered such a grievous injury while under his parents' care. *Id.* ¶¶ 29–30.

Mr. Renato also notes the medical care and damages resulting from his injury as an infant. The initial need for surgery as an infant, to install a shunt draining fluid from his brain to his abdomen, is easily attributed to his parents' delay in seeking treatment, whether intentional or negligent. *Id.* ¶¶ 24, 27. That shunt was designed to remain in Mr. Renato's body indefinitely, even though it stopped serving a medical purpose a few weeks after it was implanted. *Id.* ¶ 24. But when Mr. Renato was 17, the shunt began causing severe chest pain and surgery was again required to remove a portion of the shunt from his chest. *Id.* ¶ 28. The surgery was extensive, requiring 32 surgical staples and stiches to close the incision and eight weeks of recovery during which Mr. Renato was not permitted prescription pain medication and was largely confined to a bed. *Id.* ¶ 29. Of course, the surgery and lengthy recovery were themselves painful, but the surgery also left Mr. Renato with two "large visible scars on his chest and belly" that have caused him to suffer from low self-esteem. *Id.* ¶¶ 28-29.

**B.  Defendant Beaulieu Assaults 14-Year-Old Mr. Renato**

Mr. Renato's parents separated shortly after he was injured as an infant and Mr. Renato grew up with his father, Defendant Beaulieu, his stepmother, and two siblings. *Id.* ¶¶ 22, 32. Mr. Renato provides little detail on his home life for much of his youth but recounts a 2014 assault at his father's hands when he was 14 years old. *Id.* ¶¶ 32–40. One night, while Defendant Beaulieu was intoxicated, a verbal altercation became physical and Defendant Beaulieu assaulted Mr. Renato, holding him to the ground and punching him "in the nose with a closed fist and . . . [at] various locations on his body." *Id.* ¶ 33. Mr. Renato fled the house and a friend's parents called the police. *Id.*

//

//

//

Defendant John Doe,[1] an Auburn Police Officer, arrived and interviewed Mr. Renato. *Id.*
¶¶ 18, 35.  While Officer Doe indicated that Defendant Beaulieu would be arrested, he did not
contact child protective services and left Mr. Renato to stay at his friend's house. *Id.* ¶ 35.  After
the assault, Mr. Renato felt unable to return to his residence despite not having any other place
to go.  As a result of the assault, a domestic violence no-contact order was entered on November
29, 2014, restraining Mr. Beaulieu from having any contact with Mr. Renato. *Id.* ¶ 36.  Mr.
Renato believed that this further inhibited his ability to return to his house.

**C. Child Protective Services Fails to Adequately Support Mr. Renato**

With no place to go, Mr. Renato sought assistance from a school counselor, who
immediately reported the assault to Child Protective Services. *Id.* ¶ 37.  Defendant Jane Doe was
the social worker assigned to Mr. Renato's case. *Id.* ¶¶ 19, 37  Initially, Defendant Jane Doe
directed him to "temporary homeless shelter resources." *Id.* ¶ 37.  Subsequently, Defendant Jane
Doe encouraged Defendant Beaulieu to allow Mr. Renato to return to the family residence,
despite the no-contact order. *Id.* ¶ 38.  When Defendant Beaulieu refused, "[D]efendant Jane
Doe closed [Mr. Renato's] case and he remained homeless." *Id.*

Without any help from Child Protective Services or Defendant Jane Doe, Mr. Renato was
left to secure his own housing.  Without other options, Mr. Renato attempted to stay with his
mother, Defendant Brock, for the remainder of 2014. *Id.* at ¶ 40.  But the living conditions were
unsuitable, due to the presence of mold and flies and nothing to eat but rotten food. *Id.*  When
Mr. Renato took himself to the hospital because he was sick, Defendant Brock accused him of
running away and took him "to stay with someone from his church." *Id.*

//

---

[1] Defendant John Doe has since identified himself as Jason Schultz. *See* Dkt. #47.

ORDER – 4

### D.  Mr. Renato Is Moved to Arizona

After Mr. Renato was unable to live with his mother, he stayed for some time with Defendant Cam Crites-Pickens, whose son was a friend of Mr. Renato's.  *Id.* ¶¶ 14, 41.  But Defendant Crites-Pickens soon sought to return Mr. Renato to his father's house, in violation of the no-contact order.  *Id.* ¶ 41.  Unsuccessful, Defendants Beaulieu and Crites-Pickens instead arranged, in June 2015, for Mr. Renato to be moved to Arizona to reside with his great-uncle, Defendant Jon C. Watt.  *Id.* ¶ 42.  Mr. Renato was informed "that this was a temporary, good-faith measure to provide him with housing."  *Id.*  "Defendant Crites-Pickens took [Mr. Renato] to the airport and bought him a one-way ticket to Arizona."  *Id.* ¶ 44.

### E.  Mr. Renato's Time in Arizona

In Arizona, Mr. Renato lived with Defendant Watt, Defendant Lori Fleetwood-Watt, and their adopted-daughter Defendant Kaitlyn Henderson.  *Id.* ¶¶ 15–17, 46.  Mr. Renato did not like living in the Watt residence.  He was forced to sleep on the floor in an office "where he had little space or privacy."  *Id.* ¶ 47.  Defendant Watt was strict and aggressive, and, on several instances, Mr. Renato attempted to run away and return to Washington.  *Id.* ¶ 48.

On September 26, 2015, the discontent came to a head, the police responded, and Mr. Renato was placed in the custody of the Arizona Department of Child Safety ("ADCS").  *Id.* ¶ 50.  Mr. Renato indicates that the events were precipitated by Defendant Watt forcing him to "stand at 'parade rest' in the living room and to accept [D]efendant Henderson's insults and accusations."  *Id.* ¶ 51.  While Defendants Watt and Fleetwood-Watt watched on, Defendant Henderson assaulted Mr. Renato, "hitting him, punching him, and taunting him."  *Id.*  Not wanting to be assaulted or to fight back, Mr. Renato fled to the backyard.  *Id.*  Defendant Henderson continued her assault in the backyard, and when Mr. Renato pushed Defendant Henderson away, "Defendant Watt [] rushed at [Mr. Renato] and drove him down to the ground

1    of the patio, which was made of concrete.  Defendant Watt shoved [Mr. Renato's] head into the

2    concrete and twisted his arm behind him."  *Id.*  As a result of the altercation, the police were

3    summoned, and they cited Defendant Watt for assault and involved ADCS.  *Id.* ¶ 52.  ADCS

4    removed Mr. Renato from the Watt home and placed him with his pastor's family, Defendants

5    Nathanael Logan and Elizabeth Logan (the "Logan Defendants").  *Id.* ¶¶ 20–21, 53–54.

6        **F.  Mr. Renato's Time with the Logans**

7            Mr. Renato lived with the Logan Defendants for less than two months.  *Id.* ¶ 55.  During

8    this time, Mr. Renato's mental health declined as he struggled with "being uprooted from his

9    home in Washington and the childhood of abuse he had been enduring."  *Id.* ¶ 57.  The Logan

10   Defendants discounted Mr. Renato's concerns when he shared his mental health struggles with

11   them and delayed seeking professional help.  *Id.* ¶¶ 58–59.  Even after ADCS directed them to

12   take Mr. Renato to see a therapist and the therapist told them that Mr. Renato needed extra care

13   because of suicidal ideations, they did not take his mental health issues seriously.  *Id.* ¶ 60.

14   Struggling with his emotions every time he saw possessions reminding him of Washington, Mr.

15   Renato resolved to burn the possessions, but the resultant fire damaged the Logan Defendants'

16   "property and surrounding area."  *Id.* ¶ 61.  Mr. Renato was arrested and charged, as an adult,

17   with attempted arson.  *Id.*

18                          **III.          DISCUSSION**

19       **A.  The Court Will Grant Mr. Renato Leave to Amend His Complaint**

20           After several defendants filed motions challenging Mr. Renato's amended complaint,[2] he

21   filed a Motion for Leave to File Second Amended Complaint Within 21 Days.  Dkt. #44.  Mr.

22   Renato's motion was premised on his purported discovery of additional claims after the filing of

23

24   _____

     [2] Mr. Renato has filed several complaints in this action.  See Dkts. #1-1, #5, #7, and #14.

1    his first amended complaint.  Specifically, Mr. Renato sought to assert claims against Defendants

2    Beaulieu, Watt, and Fleetwood-Watt for "actively plan[ing] the illegal removal of [Mr. Renato]

3    from Washington to Arizona" and for "intentionally imped[ing] [Mr. Renato's] lawful efforts to

4    obtain housing, food, and clothing by sabotaging his access to public and private resources for

5    assistance." *Id.* at 1.  Further, Mr. Renato sought to assert "state-law claims of libel and slander

6    against each of these defendants for publishing hurtful, written statements on the internet which

7    have negatively impacted [his] ability to procure employment and housing; and for verbal

8    statements . . . which made it impossible for [him] to report to anyone the abuse he was

9    suffering." *Id.*  And finally, Mr. Renato sought to clarify his claimed damages.  *Id.*  Mr. Renato

10   sought "at least 21 days to draft a Second Amended Complaint" and time to serve it.  *Id.*

11        Leave to amend is to "be freely given when justice so requires."  FED. R. CIV. P. 15(a).

12   "This policy is to be applied with extreme liberality."  *Eminence Cap., LLC v. Aspeon, Inc.*, 316

13   F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted).  The party opposing amendment has the

14   burden of showing that amendment is not warranted.  *DCD Programs, Ltd. v. Leighton*, 833 F.2d

15   183, 187 (9th Cir. 1987); *see also Richardson v. United States*, 841 F.2d 993, 999 (9th Cir. 1988).

16   Amendment may be unwarranted "due to 'undue delay, bad faith or dilatory motive on part of

17   the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

18   prejudice to the opposing party . . ., [and] futility of amendment.'"  *Carvalho v. Equifax Info.*

19   *Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (quoting *Foman v. Davis,* 371 U.S. 178, 182

20   (1962)).  "Not all of the factors merit equal weight. . . .  [I]t is the consideration of prejudice to

21   the opposing party that carries the greatest weight."  *Eminence Capital, LLC*, 316 F.3d at 1052

22   (citation omitted).  "Absent prejudice, or a strong showing of any of the remaining [] factors,

23   there exists a *presumption* under Rule 15(a) in favor of granting leave to amend."  *Id.* (emphasis

24   in original).

1    Considering Mr. Renato's request for leave to file a second amended complaint in

2    isolation, the motion could appropriately be denied because Mr. Renato failed to submit a copy

3    of the amended pleading, as required by the Court's local rules.  *See* LOCAL RULES W.D. WASH.

4    LCR 15 (requiring that a party seeking leave to amend a pleading "must attach a copy of the

5    proposed amended pleading as an exhibit to the motion" and "indicate on the proposed amended

6    pleading how it differs from the pleading that it amends.").  Far from needless procedural hurdles,

7    the requirements of the local rule assure that the Court can identify the requested changes so that

8    it may properly exercise its discretion.

9    Conversely, Mr. Renato is proceeding pro se, the applicable rules are to be applied with

10   "extreme liberality," and none of the defendants have opposed Mr. Renato's motion for leave to

11   amend, apart from the arguments made in their motions for dismissal.  Mr. Renato's motion is

12   further supported by defendants' motions because where a district court dismisses claims, it

13   "should grant leave to amend even if no request to amend the pleading was made, unless it

14   determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez*

15   *v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497

16   (9th Cir.1995)) (quotation marks omitted).  Accordingly, the Court concludes that Mr. Renato's

17   motion for leave to amend his complaint should be granted.

18   Generally, the granting of leave to file an amended complaint renders pending motions

19   to dismiss moot because the filing of an amended complaint renders prior complaints—and

20   motions challenging them—meaningless.  *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 927 (9th

21   Cir. 2012) (en banc) ("[T]he general rule is that an amended complaint super[s]edes the original

22   complaint and renders it without legal effect.").  But here, Mr. Renato did not file a proposed

23   amended complaint and failed to respond substantively to several of the motions.  Accordingly,

24   the Court finds it expedient and appropriate to address the motions so that Mr. Renato may choose

ORDER – 8

1    whether to replead certain claims, attempt to cure deficiencies identified by defendants, and

2    attempt to properly plead additional actions, should he choose.  In several instances, however,

3    the Court finds that amendment would be futile and dismisses the claims with prejudice, meaning

4    that Mr. Renato may not replead them.

5    **B.  Defendant Jane Doe's Motion to Dismiss**

6            Mr. Renato sues Defendant Jane Doe, "a [Washington] Child Protective Services social

7    worker[,] . . . in her personal and official capacities."  Dkt. #14 ¶ 19.  Specifically, Mr. Renato

8    alleges that Defendant Jane Doe acted negligently in "leaving him without a legal guardian to

9    take care of him and by closing his CPS case against [Defendant Beaulieu] even though [Mr.

10   Renato] was a homeless domestic violence victim."  *Id.* ¶ 68.  Mr. Renato further alleges that

11   Defendant Jane Doe's actions were "under color of state law" and that she failed "to protect him

12   under the 14th Amendment of the United States Constitution."  *Id.* ¶ 68.  Lastly, Mr. Renato

13   claims that Defendant Jane Doe was negligent because she conspired with Defendant Beaulieu

14   in an "attempt to convince [Defendant Beaulieu] to violate the no-contact order and take [Mr.

15   Renato] back home."  *Id.* ¶ 69.  As damages for Defendant Jane Doe's actions, Mr. Renato seeks

16   $25,000 and specifies that "[d]amages against [Defendant] Jane Doe are only sought in her

17   individual capacity."  *Id.* ¶¶ 82, 86.

18           The Washington State Attorney General's Office has appeared for Defendant Jane Doe,

19   "IN HER OFFICIAL CAPACITY ONLY."  Dkt. #9 (emphasis in original).  In that capacity,

20   Defendant Jane Doe has sought dismissal of Mr. Renato's claims.

21           **1.  Dismissal for Failure to Comply with Claim Filing Statute**

22           Defendant Jane Doe first argues that Mr. Renato's state law tort claims against her, in her

23   official capacity, must be dismissed because the Court lacks subject matter jurisdiction to

24   consider them due to Mr. Renato's failure to comply with the state's claim filing statute.

ORDER – 9

1

### a.  Legal Standard

A party may seek dismissal on the basis that the court lacks subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  When a court lacks subject matter jurisdiction, it lacks the power to proceed, and its only remaining function is to dismiss.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).  Once the moving party has asserted lack of subject matter jurisdiction, the court will presume that there is no jurisdiction, and the burden is then on the party asserting jurisdiction to prove otherwise.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence."  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).

### b.  Mr. Renato Does Not Establish Subject Matter Jurisdiction

Washington State has waived sovereign immunity as to its own tortious conduct.  "The state of Washington, whether acting in its governmental or proprietary capacity, shall be liable for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation."  WASH. REV. CODE § 4.92.090.  However, in waiving sovereign immunity, the state also required that claimants seeking to recover for tortious conduct present a claim to the state's office of risk management.  *Id.* § 4.92.100(1).  Presentment of a claim is a condition precedent to initiating a lawsuit.

> No action subject to the claim filing requirements of [WASH. REV. CODE § 4.92.100] shall be commenced against the state, or against any state officer, employee, or volunteer, acting in such capacity, for damages arising out of tortious conduct until sixty calendar days have elapsed after the claim is presented to the office of risk management in the department of enterprise services.

*Id.* § 4.92.110.  "A claim is deemed presented when the claim form is delivered in person or by regular mail, registered mail, or certified mail, with return receipt requested, or as an attachment

1    to email or by fax, to the office of risk management." *Id.* § 4.92.100(1).   The claim filing

2    requirement is jurisdictional.  *See Levy v. State*, 91 Wash. App. 934, 944, 957 P.2d 1272, 1277

3    (1998) ("In the claims statute, the sovereign has established the method by which it can be held

4    liable.").

5          Here, Mr. Renato does not establish that the Court has subject matter jurisdiction to hear

6    his tort claims against Defendant Jane Doe in her official capacity.  Mr. Renato's complaint

7    contains no allegations related to his compliance with Washington's claim filing statute.  *See*

8    Dkt. #14.  Further, the only claim form in the record was presented to the state on May 16, 2020,

9    five days *after* this action was filed.  Dkt. #33-1.  In opposition, Mr. Renato argues that the claim

10   form presented by the State was a refiling and that "[t]he original tort claim was sent via first

11   class mail" seven to eight weeks prior to him filing the suit.  Dkt. #26 at 1.  But Mr. Renato's

12   argument, presented without supporting evidence, is not adequate to satisfy his burden and

13   establish the Court's subject matter jurisdiction.  Despite the statutory requirement that Mr.

14   Renato mail his claim form "return receipt requested," Mr. Renato does not provide the return

15   slip demonstrating delivery or any other proof of mailing.  Still further, Mr. Renato fails to

16   address a significant timing issue:  Mr. Renato claims that he mailed the claim form seven to

17   eight weeks prior to filing suit, but the claim filing statute requires sixty days between

18   presentment of the claim and the subsequent filing of a lawsuit.[3]

19         Accordingly, the Court concludes that it is without jurisdiction to hear Mr. Renato's state

20   law tort claims against Defendant Jane Doe in her official capacity and the claims must be

21

22

23   ─────────────────────────────
     [3] The claim form that Mr. Renato maintains he "resubmitted" was dated March 22, 2020.  *See*
24   Dkt. #33-1 at 4.  Even assuming that the claim was presented that same day, March 22, 2020 is
     only fifty days before May 11, 2020, the day on which Mr. Renato filed his lawsuit. *See* Dkt. #1.

1   dismissed.[4]  Because further factual allegations will not establish that Mr. Renato complied with

2   the state's claim filing statute prior to initiating this action, the dismissal of these claims is with

3   prejudice and without leave to amend.

4          **2.  Dismissal for Failure to State a Claim**

5         As to Mr. Renato's constitutional claims, Defendant Jane Doe argues that, in her official

6   capacity, she is not a person for the purposes of damages under § 1983 and that prospective relief

7   is not available to Mr. Renato.   As a result, Defendant Jane Doe argues, Mr. Renato's

8   constitutional claims must be dismissed because they fail to state a claim for relief.

9          **a.  Legal Standard**

10        Dismissal under Federal Rule of Civil Procedure 12(b)(6) "can be based on the lack of a

11  cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."

12  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *see also* FED. R. CIV. P.

13  8(a)(2).   While considering a Rule 12(b)(6) motion, the court accepts all facts alleged in the

14  complaint as true and makes all inferences in the light most favorable to the non-moving party.

15  *Baker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (citations omitted).

16  The court is not required, however, to accept as true a "legal conclusion couched as a factual

17  allegation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

18  550 U.S. 544, 555 (2007)).   "Determining whether a complaint states a plausible claim for relief

19  will . . . be a context-specific task that requires the reviewing court to draw on its judicial

20  experience and common sense."  *Id.* at 679 (citations omitted).

21  //

22

---

23  [4] The Court is not persuaded by Mr. Renato's unsupported argument that the passage of time has
    cured his failure to comply with the state's claim filing statute.  The position conflicts with the
24  multitude of authorities provided by the state for the proposition that failure to comply with the
    claim filing statute requires dismissal.  *See* Dkts. #24 at 5 and #32 at 2.

ORDER – 12

1    "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

2    accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting

3    *Twombly*, 550 U.S. at 570).  This requirement is met when the plaintiff "pleads factual content

4    that allows the court to draw the reasonable inference that the defendant is liable for the

5    misconduct alleged."  *Id*. (quoting *Twombly*, 550 U.S. at 556).  The complaint need not include

6    detailed allegations, but it must have "more than labels and conclusions, and a formulaic

7    recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  "The

8    plausibility standard is not akin to a probability requirement, but it asks for more than a sheer

9    possibility that a defendant has acted unlawfully. . . .  Where a complaint pleads facts that are

10   merely consistent with a defendant's liability, it stops short of the line between possibility and

11   plausibility of entitlement to relief."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556,

12   557).  Absent facial plausibility, a plaintiff's claims must be dismissed.

13                    **b.  Mr. Renato Fails to State a Claim Under § 1983**

14            State officials sued in their official capacity for damages are not persons for purposes of

15   § 1983.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither

16   a State nor its officials acting in their official capacities are 'persons' under § 1983.").  Mr.

17   Renato agrees and indicates that he is not seeking damages against Defendant Jane Doe in her

18   official capacity.  Dkt. #14 ¶¶ 82, 86; *see also* Dkt. #26 at 2 ("monetary damages [against

19   Defendant Jane Doe] are strictly associated with the state-law tort claim").  Rather, Mr. Renato

20   indicates that he is only seeking declaratory relief, which is prospective in nature.  Dkt. #26 at 2.

21   He further indicates that, to the extent "it is unclear that [he] seeks only prospective and

22   declaratory relief," he would request leave to replead the matter.  *Id.*

23            The Court notes first, that Mr. Renato's complaint does not specify that he seeks

24   declaratory relief.  *See* Dkt. #14.  However, the complaint is clear that Mr. Renato does not seek

damages as to Defendant Jane Doe in her official capacity.  As a result, Mr. Renato's intent to pursue separate relief is evident.  While Defendant Jane Doe raises various arguments as to Mr. Renato's standing to pursue declaratory relief, the Court finds those issues better resolved with the clarity of Mr. Renato's revised allegations.  Accordingly, the Court dismisses Mr. Renato's claims as currently alleged, but grants leave to replead the claims seeking prospective or declaratory relief.

### C.  Defendant John Doe's Motion for Summary Judgment

Since Mr. Renato's complaint was drafted, Defendant John Doe has since been identified as Jason Schultz, the City of Auburn police officer that responded to Defendant Beaulieu's assault of Mr. Renato.  Mr. Renato sues Defendant John Doe for damages he allegedly sustained after Defendant John Doe's alleged failure to call child protective services after conducting his investigation.[5]  *Id.* ¶ 67.  Mr. Renato further alleges that Defendant John Doe "acted under color of state law" when he "fail[ed] to protect [Mr. Renato] under the 14th Amendment of the United States Constitution." *Id.*

In turn, Defendant John Doe seeks summary judgment dismissal of these claims.  Dkt. #47.  Defendant John Doe argues that he is entitled to qualified immunity as to any constitutional claims and that any state law claims fail as a matter of law.

### 1.  Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Material facts are

---

[5] Defendant John Doe testifies that "[t]o the best of [his] knowledge, [his incident] report was subsequently faxed to CPS on December 1, 2014." Dkt. #50 ¶ 14.  This contention is supported by records submitted in support of his motion. Dkt. #48-1.  Mr. Renato has not contested this evidence or offered contrary inferences.

ORDER – 14

those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Fed. Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On summary judgment, the Court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). However, where the non-moving party fails to properly support an assertion of fact or fails to properly address the moving party's assertions of fact, the Court will accept the fact as undisputed. FED. R. CIV. P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 251. As such, the Court relies "on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1278–79 (9th Cir. 1996) (quotation marks and citations omitted).

## 2. Mr. Renato's Constitutional Claims Are Barred by Qualified Immunity

42 U.S.C. § 1983 provides a cause of action against persons, including police officers, who violate a person's constitutional or federal statutory rights while acting under the color of state law. The doctrine of qualified immunity, however, shields government officials from liability where the right alleged to have been violated was not "clearly established" at the time of the alleged actions. *Kisela v. Hughes*, ___ U.S. ___, 138 S. Ct. 1148, 1152 (2018) (per curiam) ("Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.") (*quoting White v. Pauly*, ___ U.S. ___, 137 S. Ct. 548, 551 (2017) (per curiam)). In this manner,

ORDER – 15

1   "[q]ualified immunity balances two important interests—the need to hold public officials

2   accountable when they exercise power irresponsibly and the need to shield officials from

3   harassment, distraction, and liability when they perform their duties reasonably." *Pearson v.*

4   *Callahan*, 555 U.S. 223, 231 (2009).

5           The most problematic aspect of Mr. Renato's § 1983 claims in this case is that he does

6   not identify the statutory or constitutional right which he contends was violated.  As noted by

7   Defendant John Doe, Mr. Renato broadly references the Fourteenth Amendment, a provision that

8   touches on procedural due process, substantive due process, equal protection, and more.  Dkt.

9   #14 ¶ 67.  But Mr. Renato does not plead or explain how the actions of this case implicate his

10  constitutional rights under the Fourteenth Amendment.  As a result, the Court is unable to

11  determine that any statutory or constitutional right was violated, warranting dismissal.  *See Ioane*

12  *v. Hodges*, 939 F.3d 945, 950 (9th Cir. 2018) ("If there is no constitutional violation, the inquiry

13  ends and the officer is entitled to qualified immunity.") (citing *Saucier v. Katz*, 533 U.S. 194,

14  201 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

15          At best, Mr. Renato argues that a Washington statute required Defendant John Doe to

16  transport him to a facility such as a crisis response center.  Dkt. #51 at 1 (citing WASH. REV.

17  CODE § 43.185C.260).  But, without arguing that the state statute itself violates his constitutional

18  rights, Mr. Renato cannot base his § 1983 claims on a state statute.  *See Galen v. Cnty. of Los*

19  *Angeles*, 477 F.3d 652, 662 (9th Cir. 2007) ("Section 1983 does not provide a cause of action for

20  violations of state law."); *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986) (noting

21  that § 1983 protects rights secured by the U.S. Constitution or federal statutes).  Beyond this, Mr.

22  Renato merely alleges, without pointing to any legal authority, that he had a constitutional right

23  to protection.  The unsupported argument is insufficient to overcome Defendant John Doe's

24  motion and the Court finds that dismissal of Mr. Renato's constitutional claims is appropriate.

Because the Court grants Defendant John Doe's motion for summary judgment as to these claims, they are dismissed with prejudice and Mr. Renato may not reallege them.

### 3.   Mr. Renato Fails to Adequately Allege State Law Claims

Mr. Renato's state law negligence claims are based upon his belief that Defendant John Doe, after investigating Mr. Renato's assault at the hands of Defendant Beaulieu, should have assured that Mr. Renato had access to safe housing outside of his father's home.  Defendant John Doe maintains that such a claim is barred by Washington's public duty doctrine and that, regardless, Defendant John Doe did not breach any duty owed to Mr. Renato.

Just as Washington has waived sovereign immunity as to its own tortious conduct, Washington law provides that its local governments can be held "liable for damages arising out of their tortious conduct, or the tortious conduct of their past or present officers, employees, or volunteers . . . to the same extent as if they were a private person or corporation."  WASH. REV. CODE § 4.96.010(1).[6]  A plaintiff injured by a local government's employee may seek recovery from the local government, the employee, or both.  *Hanson v. Carmona*, 16 Wash. App. 2d 834, 842, 491 P.3d 978, 982, *review granted*, 198 Wash. 2d 1009, 495 P.3d 837 (2021) (citing *Vanderpool v. Grange Ins. Ass'n*, 110 Wash. 2d 483, 487, 756 P.2d 111, 113 (1988); *Orwick v. Fox*, 65 Wash. App. 71, 80–81, 828 P.2d 12, 17–18 (1992)).  For a plaintiff to prevail on such a claim, the plaintiff "must show (1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) the breach as the proximate cause of the injury."  *Mancini v. City of Tacoma*, 196 Wash. 2d 864, 879, 479 P.3d 656, 664 (2021) (quotation marks and citations omitted).  However, where government actors are involved, special care must be taken to assure

---

[6] The same statute provides that "[f]iling a claim for damages within the time allowed by law shall be a condition precedent to the commencement of any action claiming damages."  WASH. REV. CODE § 4.96.010(1).  Mr. Renato does not allege that he filed a claim with the local government that employs Defendant John Doe and nothing in the record indicates that he did.

1    that "the duty breached was owed to an individual and was not merely a general obligation owed

2    to the public." *Beltran-Serrano v. City of Tacoma*, 193 Wash. 2d 537, 549, 442 P.3d 608, 614

3    (2019) (citing *Babcock v. Mason Cnty. Fire Dist. No. 6*, 144 Wash. 2d 774, 785, 30 P.3d 1261

4    (2001)).

5           As an initial starting point, the Court notes that Mr. Renato does not point to any

6    applicable authorities that impose a heightened duty upon Defendant John Doe in his interaction

7    with Mr. Renato.  Mr. Renato does, once again, point to RCW § 43.185C.260 which requires law

8    enforcement, under certain circumstances, to take custody of children and to deliver them to

9    specified locations. *See* Dkt. #51 at 1.  But Mr. Renato does not allege facts establishing that any

10    duty under that statute was triggered in the circumstances of his case.

11           The statute Mr. Renato relies upon, by its terms, applies where a child's parent has

12    reported "that the child is absent from parental custody without consent" or where "a law

13    enforcement officer reasonably believes, considering the child's age, the location, and the time

14    of day, that a child is in circumstances which constitute a danger to the child's safety or that a

15    child is violating a local curfew ordinance."[7]  WASH. REV. CODE § 43.185C.260(a)(1)–(2).

16    Nothing establishes that Mr. Renato's parents had reported him absent from custody without

17    consent.  Further, and as discussed below, nothing establishes that Mr. Renato, at the time he was

18    interacting with Defendant John Doe, was "in circumstances which constitute[d] a danger to [his]

19    safety."

20           Put simply, the applicable duty of care is largely immaterial as the evidentiary record does

21    not give rise to factual disputes and the Court can conclude, as a matter of law, that Defendant

22

23    _____

24    [7] The statutory duty also arises when "an agency legally charged with the supervision of a child has notified a law enforcement agency that the child has run away from placement." WASH. REV. CODE § 43.185C.260(a)(3).  That provision is not implicated by Mr. Renato's allegations.

ORDER – 18

John Doe did not breach any duty owed to Mr. Renato. In support of his motion, Defendant John Doe submits his sworn report detailing his investigation of the assault. *See* Dkt. #50-1. That report indicates that Mr. Renato was contacted at the home of Julie Storer in the company of Ms. Storer and another adult, that Mr. Renato had walked there following the assault, that he did not feel safe returning to his house, and that he wished to stay at Ms. Storer's home "for the time being." *Id.* at 1–5. The factual allegations of Mr. Renato's complaint are consistent with Defendant John Doe's report and Mr. Renato has not submitted any evidence contradicting Defendant John Doe's testimony.[8] As a result, and on this record, no reasonable jury could conclude that Defendant John Doe found Mr. Renato in circumstances constituting a danger to his safety or that Defendant John Doe had a duty beyond ordinary care as to Mr. Renato's safety. Nor could a reasonable jury conclude that Defendant John Doe breached his duty of ordinary care by allowing Mr. Renato to stay, as he requested, with two adults in a secure dwelling within walking distance of his own residence. Defendant John Doe did not breach any duty owed to Mr. Renato and Mr. Renato's state law negligence claims fail.[9] The Court grants Defendant John Doe's motion for summary judgment and dismisses the claims against him with prejudice.

---

[8] In his response, Mr. Renato makes several unsworn assertions, including that he "was in danger of homelessness because he could not stay in [Ms. Storer's] home for an extended time," that the two adults "could not be permanent guardians or caretakers for" him, and that they "had only agreed to help in the interim" with no plan beyond several weeks. Dkt. #51 at 1. Defendant John Doe requests that the Court strike the unsworn statements in Mr. Renato's response, as the Court may only consider admissible evidence in ruling on a motion for summary judgment. Dkt. #52 at 1–2 (citing Fed. R. Civ. P. 56(c)). The Court does not address the issue because, even taking the unsworn statements as fact, there is no indication that they were shared with or known by Defendant John Doe at any relevant time.

[9] Significant proximate cause issues are also implicated by Mr. Renato's claims. Mr. Renato views Defendant John Doe's failure to adequately protect him as the cause of all subsequent harms resulting from Mr. Renato's housing situation. But Mr. Renato does not establish that Defendant John Doe had a continuing duty to assure that he maintained housing after the night of their initial interaction. On that night, Defendant John Doe made sure Mr. Renato had safe housing. He could not have known that Mr. Renato would never return to his house, that Child

1

**D. Defendant Crites-Pickens' Motion to Dismiss**

2

Mr. Renato sues Defendant Crites-Pickens for emotional injuries caused by her

3

"conspiring with [Defendant Beaulieu] to violate the domestic violence no-contact order and [to]

4

abandon [Mr. Renato] in another state with hostile relatives." Dkt. #14 ¶ 70. Defendant Crites-

5

Pickens seeks dismissal of those claims, arguing that Mr. Renato has failed to state a claim upon

6

which he may recover. Dkt. #53. As discussed previously in Section III.B.2.a., Mr. Renato's

7

complaint, to survive Defendant Crites-Pickens's motion to dismiss, must set forth "sufficient

8

factual [allegations], accepted as true, to 'state a claim to relief that is plausible on its face.'"

9

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

10

The Court first notes that Mr. Renato has failed to respond to Defendant Crites-Pickens'

11

motion to dismiss. "Except for motions for summary judgment, if a party fails to file papers in

12

opposition to a motion, such failure may be considered by the court as an admission that the

13

motion has merit." LOCAL RULES W.D. WASH. LCR 7(b)(2). Here, the Court considers Mr.

14

Renato's failure to substantively respond as an admission that the motion has merit. The motion

15

is appropriately granted on that basis.

16

The Court does not, however, dismiss Mr. Renato's claims against Defendant Crites-

17

Pickens with prejudice. Mr. Renato's allegations clearly touch on emotional distress and civil

18

conspiracy and, more broadly, implicate potential claims of outrage and claims related to Mr.

19

Renato's departure from Washington. *See, e.g.*, 16 WASH. PRAC., TORT LAW AND PRACTICE §

20

6:9 (5th ed.) (considering the varied treatment of emotional distress claims in Washington);

21

*Sutton v. Tacoma Sch. Dist. No. 10*, 180 Wash. App. 859, 869, 324 P.3d 763, 768 (2014) (claim

22

23

Protective Services would fail to secure adequate housing for Mr. Renato despite being notified
of the incident, or that Mr. Renato would thereafter lack adequate housing. Defendant John Doe
appears to have acted reasonably in the circumstances presented to him.

24

ORDER – 20

of outrage requires (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) severe emotional distress resulting from the conduct); *Adams v. King Cnty.*, 164 Wash. 2d 640, 660, 192 P.3d 891, 901 (2008) ("A [civil] conspiracy is a combination of two or more persons who contrive to commit a criminal or unlawful act, or to commit a lawful act for criminal or unlawful purposes."). Yet Defendant Crites-Pickens has not cited to any legal authority demonstrating that Mr. Renato's claims fail as a matter of law or that amendment of the claims would be futile. Accordingly, the claims against Defendant Crites-Pickens are dismissed without prejudice and Mr. Renato may choose to reallege the claims.

**E. Defendants Watt and Fleetwood-Watt**

Mr. Renato sues Defendants Watt and Fleetwood-Watt for emotional injury caused "when they confined him to a tiny living space with a small mat to sleep on and by verbally abusing him in response to his father leaving him with them." Dkt. #14 ¶ 73. Mr. Renato further attempts to hold Defendants Watt and Fleetwood-Watt responsible for his September 26, 2015 assault at the hands of Defendant Henderson, their daughter. More specifically, he alleges that they "share partial responsibility" and that they "were jointly and willfully negligent of [Mr. Renato]. . . when they allowed [Defendant Henderson] to assault" him. *Id.* ¶¶ 75–76. Finally, Mr. Renato sues Defendant Watt for assault arising out of their September 26, 2015 altercation. *Id.* ¶ 77.

Defendants Watt and Fleetwood-Watt seek dismissal, pursuant to Federal Rule of Civil Procedure 12(b)(1), on the basis that the Court lacks subject matter jurisdiction to consider Mr. Renato's claims against them.[10] As set forth above, the burden is on Mr. Renato to establish the Court's subject matter jurisdiction. *Supra* sec. III.B.1.a.

---

[10] Defendants Watt and Fleetwood-Watt note that Mr. Renato's complaint seeks damages from them in the amounts of $20,000 and $15,000, respectively. Dkt. #40 at 2. As such, they argue

1   Mr. Renato filed a response to Defendants Watt and Fleetwood-Watt's motion to dismiss,

2   but his response failed to substantively contest their legal arguments.  Dkt. #43.  Rather, Mr.

3   Renato merely pointed out a possible drafting mistake and reiterated his desire to amend his

4   claims.  The Court accepts Mr. Renato's failure to substantively respond as an admission that the

5   motion has merit.  LOCAL RULES W.D. WASH. LCR 7(b)(2).  Additionally, the Court takes Mr.

6   Renato's failure to substantively support his claims as indicative that he may not plan to pursue

7   them farther.  Conversely, Defendants Watt and Fleetwood-Watt have not demonstrated that

8   amendment would be futile and have not adequately addressed the possibility that Mr. Renato's

9   claims against them fall within the Court's supplemental jurisdiction.[11]  Accordingly, the Court

10  dismisses Mr. Renato's claims against Defendants Watt and Fleetwood-Watt without prejudice

11  and with leave to amend.  Should Mr. Renato choose to reallege his claims against Defendants

12  Watt and Fleetwood-Watt, he must adequately invoke the Court's jurisdiction and set forth valid

13  claims against them.

14  **F. The Logan Defendants**

15  Mr. Renato asserts two claims against Logan Defendants.  He first sues them for causing

16  emotional injury "by verbally abusing him and telling him that mental illness was a myth."  Dkt.

17  #14 at ¶ 78.  Second, Mr. Renato alleges that the Logan Defendants were negligent in "refusing

18

19  that the amount in controversy falls below the $75,000 threshold that permits a federal court to
20  hear cases involving diverse parties—those residing in separate states.  *Id.* (citing 28 U.S.C.
    § 1332).

21  [11] Pursuant to 28 U.S.C. § 1367, a Court that otherwise has jurisdiction to hear the claims in a
22  case—for example, where a federal question is presented—may exercise supplemental
    jurisdiction over claims that constitute the same case or controversy.  28 U.S.C. § 1367(a), (b).
23  Here, Mr. Renato's primary contention is that the damages of all defendants contributed to his
    ongoing mental health issues.  Defendants Watt and Fleetwood-Watt do not establish that Mr.
24  Renato's claims against them cannot be part of his case or controversy against the other
    defendants.

ORDER – 22

1   to seek treatment and support for [Mr. Renato's] oncoming mental health issues." Dkt. #14 at

2   ¶ 79.

3          Initially, Logan Defendants sought to have Mr. Renato provide a more definite statement

4   of his claims against him. Dkt. #29. They maintained that Mr. Renato's first amended complaint

5   was "vague, unintelligible, and confusing" as to his claims against them. *Id.* at 1. Subsequently,

6   however, Logan Defendants have withdrawn their motion for a more definite statement and have

7   instead sought dismissal, asserting that Mr. Renato has failed to adequately state a claim against

8   them and that the Court lacks subject matter jurisdiction, following the lead of Defendants Watt

9   and Fleetwood-Watt. Dkt. #57.

10         Mr. Renato likewise failed to respond to the Logan Defendants' motion to dismiss. The

11  Court accepts the failure to respond as an admission that the motion has merit. LOCAL RULES

12  W.D. WASH. LCR 7(b)(2). However, and as above, the Court dismisses Mr. Renato's claims

13  against the Logan Defendants without prejudice and grants Mr. Renato leave to reallege his

14  claims. Logan Defendants have not established that amendment of Mr. Renato's claims for

15  negligent infliction of emotional distress would be futile[12] and have not addressed the possibility

16  that Mr. Renato's claims against them fall within the Court's supplemental jurisdiction.

17

18  ─────────────────
    [12] Arizona recognizes a claim for negligent infliction of emotional distress, making available
19  "damages for shock or mental anguish at witnessing an injury to a third person," provided that
    "the shock or mental anguish of the plaintiff must be manifested as a physical injury." *Keck v.*
20  *Jackson*, 122 Ariz. 114, 115, 593 P.2d 668, 669 (1979). Case law makes clear, however, that
    such a claim does not strictly have to involve observation of an injury to a third person. *See*
21  *Monaco v. HealthPartners of S. Arizona*, 196 Ariz. 299, 301, 995 P.2d 735, 737 (Ct. App. 1999)
    (considering negligent infliction of emotional distress claim where a patient suffered
22  psychological damage after being negligently treated with a radioactive substance that increased
    his chances of contracting cancer). However, even when the plaintiff is the one harmed, Arizona
23  "requires a showing of bodily harm." *Id.* at 302; *see also Keck*, 122 Ariz. at 115–16, 593 P.2d at
    669–70 (noting requirement for physical injury because "[d]amages for emotional disturbance
24  alone are too speculative"). While Mr. Renato has not alleged that his emotional distress
    manifested as a physical condition, Logan Defendants do not establish that he cannot allege facts,
    consistent with his amended complaint to adequately set forth such a claim.

ORDER – 23

### G. Defendants Beaulieu, Brock, and Henderson

Mr. Renato has also sued Defendants Beaulieu, Brock, and Henderson.  However, to date none of these defendants have appeared in this action and the United States Marshal has filed Process Receipt and Return sheets indicating that no returns have been received for these defendants.  Dkts. ##54–56.

Pursuant to Federal Rule of Civil Procedure 4, a plaintiff is required to serve each defendant and file proof of service with the Court.  FED. R. CIV. PRO. 4(l).  "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  FED. R. CIV. PRO. 4(m).  Upon a showing of good cause, "the court must extend the time for service for an appropriate period."  *Id.*

The Court will accordingly order Mr. Renato to file a response to this order addressing his failure to timely file proof of service.

## IV.     CONCLUSION

Accordingly, and having considered the parties' motions, the briefing and supporting documents filed in support of the motions, and the remainder of the record, the Court finds and ORDERS:

1.  State Defendant Jane Doe's Motion to Dismiss Under Fed. R. Civ. P. 12(b) (Dkt. #24) is GRANTED in part.

    a.  All of Mr. Renato's state law tort claims against Defendant Jane Doe in her official capacity are dismissed with prejudice.

    b.  All of Mr. Renato's constitutional claims against Defendant Jane Doe in her official capacity are dismissed without prejudice.  Should Mr. Renato choose to

reallege constitutional claims against Defendant Jane Doe in her official capacity, such claims are limited to those seeking prospective or declaratory relief.

2. Defendants Lori Fleetwood-Watt and Jon C. Watt's Motion to Dismiss Under Fed. R. Civ. P. 12(b) (Dkt. #40) is GRANTED in part.  All of Mr. Renato's claims against Defendants Jon C. Watt and Lori Fleetwood-Watt are dismissed without prejudice.

3. Defendant Jason Schultz aka "John Doe's" Motion for Summary Judgment (Dkt. #47) is GRANTED.  All of Mr. Renato's claims against Defendant John Doe/Jason Schultz are dismissed with prejudice.

4. Defendant Crites-Pickens Fed. R. Civ. P. 12(b)(6) Motion to Dismiss (Dkt. #53) is GRANTED in part.  All of Mr. Renato's claims against Defendant Cam Crites-Pickens are dismissed without prejudice.

5. Defendants Nathanael Logan and Elizabeth Logan's Motion to Dismiss Pursuant to FRCP 12(b) (Dkt. #57) is GRANTED in part.  All of Mr. Renato's claims against Defendants Nathanael Logan and Elizabeth Logan are dismissed without prejudice.

6. Mr. Renato's Motion for Leave to File Second Amended Complaint Within 21 Days (Dkt. #44) is GRANTED in part.

    a. Mr. Renato is granted leave to file a second amended complaint within twenty-one (21) days from the date of this Order.

    b. Mr. Renato's second amended complaint may reallege his current claims as specified in this Order.

    c. Failure to timely file a second amended complaint could result in termination of this action.

7. The Court orders Mr. Renato to show cause, by filing a response to this Order, why this action should not be dismissed as to Defendants John N. Beaulieu, Jennifer M. Brock, and Kaitlyn Henderson.

    a. Mr. Renato's response must explain: (1) how he served these defendants in accordance with the Federal Rules of Civil Procedure, and (2) if defendants have not yet been served in accordance with the Federal Rules of Civil Procedure, why the Court should allow him additional time to properly serve these defendants.

    b. Mr. Renato's response must be filed no later than twenty-one (21) days from the date of this Order.

    c. Mr. Renato's response is not to exceed five (5) pages.

    d. Failure to timely file a response to this Order could result in dismissal of the above specified defendants or termination of this action.

DATED this 20th day of May, 2022.


RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER – 26